IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

v.

LEE JOHN MAHER
   and
LARRY KENNETH LONG
_____/

INDICTMENT

4:16 cr 30/MW

THE GRAND JURY CHARGES:

## COUNT ONE

### A.  INTRODUCTION

At all times relevant to this Indictment, unless otherwise specified:

1. On or about April 19, 2007, Clean Fuel, LLC ("Clean Fuel") was incorporated as a Florida Limited Liability Company with a corporate address in Orlando, Florida.

2. Clean Fuel operated a grease rendering plant in Groveland, Florida, until in or about September 2010.

3. In or about October 2008, Clean Fuel applied for a $2,500,000 grant through the Florida Energy and Climate Commission ("FECC"), also known as the Governor's Energy Office for the State of Florida ("GEO"). While the GEO selected Clean Fuel as a grant recipient in February 2009, the State of Florida was unable to fund this grant.

Returned in open court pursuant to Rule 6(f)
May 17, 2016
Date
[signature]
United States Magistrate Judge

4. On or about March 23, 2009, Clean Fuel Lakeland, LLC ("CFL") was incorporated as a Florida Limited Liability Company with the same corporate address as Clean Fuel.

5. Between on or about March 23, 2009 and in or about September 2010, CFL leased and operated a biodiesel plant in Lakeland, Florida.

6. **LEE JOHN MAHER** was the chief executive officer of Clean Fuel and CFL.

7. **LARRY KENNETH LONG** acted as the grant coordinator for Clean Fuel and CFL.

8. Clean Fuel maintained account ending in 2384 at Orange Bank of Florida. **LEE JOHN MAHER** and **LARRY KENNETH LONG** were authorized signators on this account. CFL maintained account ending in 3118 at Orange Bank of Florida. **MAHER** was an authorized signator on this account.

9. On or about February 17, 2009, the President of the United States signed the American Recovery and Reinvestment Act of 2009 ("Recovery Act") into law. The Recovery Act created a variety of programs intended to stimulate the economy, including State Energy Program ("SEP") Formula Grants. The SEP grants were funding mechanisms to distribute monies through state and territorial government agencies in support of energy efficiency projects and renewable energy

projects. Under the SEP grants, the intermediary agencies awarded and administered grants funded by the federal government.

10. On or about April 22, 2009, the State of Florida was awarded an SEP grant from the United States Department of Energy ("USDOE") under the Recovery Act. The Florida SEP Grant funded several program categories, including Shovel Ready Energy Project Grants ("SREPG"). The SREPG program was designed to identify projects that could quickly be implemented, building upon pre-existing Florida state energy grant initiatives.

11. In or about April 2009, Clean Fuel applied to GEO, in Tallahassee, Florida, seeking $2,500,000 in SREPG grant monies for energy efficient retrofits and upgrades at its Lakeland plant, to assist in the reduction of energy used in the commercial production of biodiesel.

12. On or about May 12, 2010, **LEE JOHN MAHER** signed Florida Energy and Climate Commission Grant Agreement No. ARS005 ("Initial Grant Agreement") as Chief Executive Officer of Clean Fuel. The agreement identified **LARRY KENNETH LONG** as the Grantee's Representative, with the title "Business Development Advisor."

13. The Initial Grant Agreement provided that Clean Fuel, as Grantee, would be a sub-grantee of federal financial assistance from the USDOE and would be eligible for reimbursement of allowable costs incurred in connection with the

Grant Work Plan contained in Attachment A to the Initial Grant Agreement ("Initial Grant Work Plan").

14. The Initial Grant Work Plan identified goals to be accomplished with the grant funding, including energy efficient retrofits and upgrades, the use of waste heat for production purposes, and the production of electricity from biodiesel.

15. To obtain grant monies under the Initial Grant Agreement, Clean Fuel was required to, among other things,

    a.    provide a detailed listing of expenditures made under the agreement, including a description of the goods or services purchased, date of purchase, and method of payment;

    b.    provide supporting documentation for allowable costs;

    c.    make a minimum investment ("minimum match") of $7,000,000 towards the project described in the Initial Grant Work Plan; and

    d.    provide monthly progress reports summarizing the progress, expenditures, and other pertinent information about the project being funded by the grant.

16. The Initial Grant Agreement provided that at least 10 percent of reimbursements would be withheld until receipt and approval of a final report. The Initial Grant Agreement provided that the FECC could terminate the agreement if the grantee failed to meet any of its obligations under the agreement. Upon the

failure of compliance with the Initial Grant Agreement, the FECC could, among other remedies, disallow payment for actions and activities that were not in compliance with the agreement, and pursue any other legally available remedies.

17. On or about May 13, 2010, the GEO awarded Grant No. ARS005 to Clean Fuel in the amount of $2,500,000.

18. On or about October 5, 2010, **LEE JOHN MAHER** signed, as Chief Executive Officer of Clean Fuel, "Florida Energy and Climate Commission Grant Agreement No. ARS005, Amendment 1" ("Amended Grant Agreement"). The Amended Grant Agreement provided for the installation of a 3.2 MW (megawatt) generator to produce electricity from the biodiesel fuel produced at the CFL plant and otherwise left the Initial Grant Agreement in full force and effect.

### B. THE CONSPIRACY

Between on or about April 1, 2009, and on or about March 31, 2013, in the Northern District of Florida and elsewhere, the defendants,

**LEE JOHN MAHER**
and
**LARRY KENNETH LONG**

did knowingly and willfully combine, conspire, confederate, and agree together and with other persons:

1. to devise and intend to devise a scheme to defraud and for obtaining money and property by means of material false and fraudulent pretenses,

5

representations, and promises, and to cause mail to be sent and delivered by the United States Postal Service for the purpose of executing this scheme, in violation of Title 18, United States Code, Section 1341;

2. to devise and intend to devise a scheme to defraud and for obtaining money and property by means of material false and fraudulent pretenses, representations, and promises, and, to cause wire communications to be transmitted in interstate commerce for the purpose of executing this scheme, in violation of Title 18, United States Code, Section 1343; and

3. to receive, conceal, and retain, with the intent to convert to their own use and gain, money of the United States of a value of more than $1,000, to wit, grant funds disbursed from the United States Department of Energy, through the State of Florida, in the approximate amount of $2,232,000, knowing such money to have been converted, in violation of Title 18, United States Code, Section 641.

### C. MANNER AND MEANS

The manner and means by which this conspiracy was committed included the following:

1. To induce GEO to approve grant funding under the Initial Grant Agreement, **LEE JOHN MAHER** falsely represented that Clean Fuel had expended approximately $6,526,102.16 for certain equipment purchases listed on the Initial Grant Work Plan when, in truth, CFL had actually paid substantially less

for the listed equipment.

2. Upon being advised that costs for the equipment listed in the Initial Grant Work Plan were not eligible for reimbursement because they had been incurred prior to the execution of the Initial Grant Agreement, **LEE JOHN MAHER** and **LARRY KENNETH LONG** submitted to GEO as part of the Amended Grant Agreement, an Amended Grant Work Plan, in which the conspirators falsely represented that Clean Fuel had incurred "match" costs of approximately $8,856,857.16 for equipment purchases.

3. To support the claim that Clean Fuel had expended approximately $8,856,857.16 for equipment purchases, **LEE JOHN MAHER** and **LARRY KENNETH LONG** listed equipment in the Amended Grant Work Plan for which the purchase costs were substantially overstated.

4. To satisfy the matching funds requirement, conspirators signed and caused to be submitted to GEO as part of the Amended Grant Agreement a "Payment Request Summary Form" falsely representing that Clean Fuel had expended approximately $8,856,857.16.

5. Seeking reimbursement under the Amended Grant Agreement, **LEE JOHN MAHER** and **LARRY KENNETH LONG** falsely represented on the Payment Request Summary Form that Clean Fuel had purchased equipment totaling $2,480,000 from Fairbanks Morse Engine ("FME") in October 2010.

6. In support of their false claims for reimbursement under the Initial and Amended Grant Agreements, in the Payment Request Summary Form, the conspirators included vendor invoice numbers, payment amounts, check numbers, check dates, and descriptions detailing eight payments that the conspirators falsely claimed had been made to FME.

7. As "supporting documentation" to establish that $2,480,000 had been paid to FME and that Clean Fuel was entitled to a reimbursement of 90 percent of this sum (i.e. $2,232,000), the conspirators caused to be submitted to GEO:

    a. a purchase order in the amount of $2,480,000, purportedly for the purchase of equipment from FME with directions that the equipment be shipped to the CFL biodiesel facility in Lakeland, Florida;

    b. copies of eight bank checks drawn on Orange Bank of Florida account ending in 3118, made payable to FME in amounts totaling $2,480,000, bearing the authorized signature stamp of **LEE JOHN MAHER** and the check numbers, amounts, and dates detailed in the Payment Request Summary Form, which check copies purported to show that Clean Fuel had paid $2,480,000 to FME when, in fact, the checks were never given to or negotiated by FME, and there was no time at which there were

        sufficient funds in Orange Bank of Florida account ending in 3118 to pay these checks; and

    c.    a proposal by FME to sell a recently overhauled 12-cylinder dual fuel engine generator set for a total price of $2,480,000, bearing the signature of **LEE JOHN MAHER**, as CEO, purportedly accepting the proposal, with the signature of **LARRY KENNETH LONG**, as witness.

8.    On or about November 9, 2010, the conspirators caused a Grant Monthly Progress Report to be submitted to the GEO that falsely represented that "[o]n October 18th the entire electrical system was ordered totaling $2.48 million. The required deposit and seven sub-systems of the electrical system were paid between October 18th through October 29th, 2010." This report also falsely claimed that Clean Fuel had invested more than $8,000,000 in matching funds in this project.

9.    In the submissions described in paragraphs 1 through 8 of this section, the conspirators fraudulently concealed the facts that, as of September 2010, the Lakeland biodiesel plant for which the grant monies were sought had been closed and that no payments had been made to FME.

10.    By means of the false representations and material omissions described in paragraphs 1 through 9 of this section, the conspirators caused GEO to mail via

the United States Postal Service, from Tallahassee, Florida, to Clean Fuel corporate offices in Orlando, Florida, an expense warrant payable to Clean Fuel, LLC in the amount of $2,232,000, representing grant funds paid under Grant No. ARS005.

11. On or about December 10, 2010, the conspirators deposited the expense warrant into Orange Bank of Florida account ending in 2348, a CFL account.

12. Between on or about December 10, 2010, and on or about December 22, 2010, **LEE JOHN MAHER** made a series of transfers from CFL account ending in 2348, including a transfer of approximately $22,230 to the Wells Fargo bank account of **LARRY KENNETH LONG**, and transfers totaling approximately $1,454,320 to bank accounts controlled by **MAHER.**

13. Between in or about December 2010 and on or about February 3, 2012, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused 15 additional monthly progress reports to be submitted via email and the United States Postal Service to GEO and its successor, the Office of Energy ("OOE"), each falsely representing that the $2,400,000 of electrical components were being assembled and prepared by FME for delivery in 2011, falsely claiming that Clean Fuel had invested more than $8,000,000 in matching funds on the project, and falsely stating that $2,480,000 had been paid to FME.

14. In the monthly progress reports described in paragraph 13, **LEE JOHN MAHER** and **LARRY KENNETH LONG** fraudulently omitted and concealed the

fact that no monies had ever been paid by Clean Fuels to FME.

### D. OVERT ACTS

In furtherance of this conspiracy and to effect the objects thereof, the following overt acts, among others, were committed:

1. On or about October 5, 2010, **LEE JOHN MAHER** signed the Amended Grant Agreement as Chief Executive Officer of Clean Fuel, LLC.

2. On or about October 18, 2010, **LARRY KENNETH LONG** signed a purchase order for $2,480,000 worth of equipment and services from FME.

3. On or about October 21, 2010, **LEE JOHN MAHER** and **LARRY KENNETH LONG** signed their acceptance of FME's Proposal to sell $2,480,000 worth of equipment and services.

4. On or about November 5, 2010, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused a Payment Request Summary Form to be submitted to the GEO in Tallahassee, Florida.

5. On or about November 5, 2010, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused copies of eight checks, purportedly reflecting payments to FME, to be submitted to the GEO in Tallahassee, Florida.

6. On or about November 5, 2010, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused copies of the FME Purchase Order and the FME Proposal to be submitted to the GEO in Tallahassee, Florida.

7. On or about November 2, 2010, **LARRY KENNETH LONG** signed a monthly false progress report for the months of May through October, 2010.

8. On or about November 9, 2010, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused a false progress report for the month of October 2010 to be submitted to the GEO in Tallahassee, Florida.

9. On or about December 10, 2010, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused a State of Florida expense warrant in the amount of $2,232,000 to be deposited into Orange Bank of Florida account ending in 2348.

10. Between on or about December 10, 2010, and on or about December 22, 2010, **LEE JOHN MAHER** caused six transfers totaling approximately $1,476,640 to be made from Orange Bank of Florida account ending in 2348.

11. On or about December 14, 2010, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused a false progress report for the month of November 2010 to be submitted to the GEO in Tallahassee, Florida.

12. On or about January 4, 2011, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused a false progress report for the month of December 2010 to be submitted to the GEO in Tallahassee, Florida.

13. On or about February 8, 2011, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused a false progress report for the month of January 2011 to be submitted to the GEO in Tallahassee, Florida.

14. On or about March 1, 2011, **LARRY KENNETH LONG** met with representatives of the GEO and the DOE in Lakeland, Florida.

15. On or about May 27, 2011, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused an email to be sent to the GEO regarding "Update on Land Purchase and Landlord dispute for Lakeland."

16. On or about March 7, 2011, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused a false progress report for the month of February 2011 to be submitted to the GEO in Tallahassee, Florida.

17. On or about April 4, 2011, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused a false progress report for the month of March 2011 to be submitted to the GEO in Tallahassee, Florida.

18. On or about May 5, 2011, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused a false progress report for the month of April 2011 to be submitted to the GEO in Tallahassee, Florida.

19. On or about June 6, 2011, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused a false progress report for the month of May 2011 to be submitted to the GEO in Tallahassee, Florida.

20. On or about July 6, 2011, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused a false progress report for the month of June 2011 to be submitted to the GEO in Tallahassee, Florida.

21. On or about August 3, 2011, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused a false progress report for the month of July 2011 to be submitted to the OOE in Tallahassee.

22. On or about August 18, 2011, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused an email to be sent to the OOE regarding "ARS005 Update on Landlord situation."

23. On or about August 31, 2011, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused a copy of the August 2011 monthly false progress report to be delivered by the United States Postal Service to the OOE in Tallahassee, Florida.

24. On or about October 4, 2011, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused a false progress report for the month of September 2011 to be submitted to the OOE in Tallahassee, Florida.

25. On or about November 2, 2011, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused a false progress report for the month of October 2011 to be submitted to the OOE in Tallahassee, Florida.

26. On or about November 2, 2011, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused an email to be sent to the OOE regarding "Update on Landlord issue and access to Lakeland facility for ARS-005."

27. On or about December 6, 2011, **LEE JOHN MAHER** and **LARRY**

**KENNETH LONG** caused a false progress report for the month of November 2011 to be submitted to the OOE in Tallahassee, Florida.

28. On or about December 7, 2011, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused an email to be sent to the OOE regarding "Brutal Update on impasse with our landlord."

29. On or about January 4, 2012, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused a false progress report for the month of December 2011 to be submitted to the OOE in Tallahassee, Florida.

30. On or about February 3, 2012, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused a false progress report for the month of January 2012 to be submitted to the OOE in Tallahassee, Florida.

31. On or about February 13, 2012, **LEE JOHN MAHER** sent a letter to the OOE in Tallahassee, Florida, regarding "Grant Number 17628 (formerly ARS-005)."

32. On or about April 30, 2012, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused an email to be sent to the OOE regarding "FW: Attached Image."

33. On or about October 7, 2012, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused an email to be sent to the OOE regarding "Clean Fuels Grant."

15

34. On or about October 8, 2012, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused an email to be sent to the OOE regarding "Forgot one item in my earlier email on the location."

35. On or about November 15, 2012, **LEE JOHN MAHER** and **LARRY KENNETH LONG** caused an email to be sent to the OOE regarding "November 15th update on 17628 (formerly ARS 005)."

All in violation of Title 18, United States Code, Sections 371 and 1349.

## COUNT TWO

The allegations in Count One are hereby realleged and incorporated by reference.

Between on or about December 10, 2010, and on or about March 31, 2013, in the Northern District of Florida and elsewhere, the defendants,

**LEE JOHN MAHER,**
and
**LARRY KENNETH LONG,**

knowingly and willfully did receive, conceal, and retain, with the intent to convert to their own use and gain, money of the United States of a value more than $1,000, to wit, grant funds disbursed from the United States Department of Energy, through the

State of Florida, in the approximate amount of $2,232,000, knowing such money to have been converted.

In violation of Title 18, United States Code, Section 641.

A TRUE BILL:

17 MAY 2016
DATE

*(signature)*
CHRISTOPHER P. CANOVA
United States Attorney

*(signature)*
MICHAEL T. SIMPSON
Assistant United States Attorney