AO 93 (Rev. 12/09) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the
Middle District of Florida

| | |
|---|---|
| In the Matter of the Search of ) | |
| *(Briefly describe the property to be searched* ) | |
| *or identify the person by name and address)* ) Case No. 13-mj- 1172 | |
| ) | |
| residence located at Hamptons at Metro West, 6660 ) | |
| Times Square Avenue, Unit 102, Orlando, Florida ) | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Middle_____ District of _____Florida_____
*(identify the person or describe the property to be searched and give its location)*:
See Attachment A.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:
See Attachment B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before      4- 10 - 2013
*(not to exceed 14 days)*

☒ in the daytime  6:00 a.m. to 10 p.m.          ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge

_____ .
*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*  ☐ for _____ days *(not to exceed 30)*.
                                             ☐ until, the facts justifying, the later specific date of _____

Date and time issued:   3- 29- 2013
                        3:55 p.M.                          _____
                                                              *Judge's signature*

City and state:   Orlando, Florida                    Thomas B. Smith, United States Magistrate Judge
                                                              *Printed name and title*

GOVERNMENT
EXHIBIT
5

PENGAD 800-631-6989

*AO 93 (Rev. 12/09) Search and Seizure Warrant (Page 2)*

| Return | | |
|---|---|---|
| Case No.:<br>13-mj- 1172 | Date and time warrant executed:<br>3/29/13 1645 hrs. | Copy of warrant and inventory left with:<br>on table at premises |
| Inventory made in the presence of :<br>USSS SA E. BEYER & FDACS OIG CAPT B. BALSER | | |
| Inventory of the property taken and name of any person(s) seized: | | |

22 boxes of misc. business records  (living room)

misc. file folders & loose papers containing business records
(top of living room end table)

3 binders containing business records  (living room nightstand)

misc. file folders & loose papers containing business & financial records
(living room nightstand)

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original
warrant to the designated judge.

Date:  4/2/13

_____
Executing officer's signature

USSS SPECIAL AGENT Emily BEYER
*Printed name and title*

## ATTACHMENT A

**Hamptons at Metro West," 6660 Times Square Avenue, Unit 102, Orlando, Florida**

The property located at "Hamptons at Metro West," 6660 Times Square Avenue, Unit 102, Orlando, Florida  is a condominium unit (hereinafter, "Unit 102"). "6660" identifies one building containing five three-story units.  Unit 102 is tan stucco with white trim.  Facing the building, Unit 102 is the second unit from the right.  A brown door to Unit 102 bears a black plate bearing the number "102." A black sign on the building indicates the building number 32 and the address number 6660.  Concrete steps with black railings leads to the door of Unit 102.



## ATTACHMENT B

### DESCRIPTION OF ITEMS TO BE SEARCHED FOR AND SEIZED

For the period 2008 to the present, evidence of violations of Title 18 United States Code, Sections 287 (false claims against the United States), 286 (false claim conspiracy), 1341 (mail fraud), and 1956 (money laundering), including:

1. any and all documentation relating to applications for grants or payments to be funded by the United States Government and/or the state of Florida;

2. all records relating to the purchase, sale, or use of alternative energy equipment;

3. all records relating to accounts at Orange Bank of Orlando, CNL Bank, Trustco Bank, and Wells Fargo (formerly Wachovia Bank); and

4. all records relating to the expenditure and/or disbursement (directly or indirectly) of grant proceeds.

AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

## SEALED

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

residence located at Hamptons at Metro West, 6660
Times Square Avenue, Unit 102, Orlando, Florida

)
)
)
)
)

Case No. 13-mj- 1172

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Middle_____ District of _____Florida_____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 286, 287, 1341 and 1956 | Conspiracy to Defraud the Government; False Claims Against the United States; Mail Fraud and Money Laundering |

The application is based on these facts:
See attached Affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Emily Beyer, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___3-29-2013___  I certify the foregoing to be a true and correct copy of the original.
SHERYL L. LOESCH, Clerk
United States District Court
Middle District of Florida

By: _____
Deputy Clerk

*Judge's signature*

City and state: Orlando, Florida   Thomas B. Smith, United States Magistrate Judge
*Printed name and title*

# SEALED

**STATE OF FLORIDA**

**CASE NO: 6:13-mj- 1172**

**COUNTY OF ORANGE**

## AFFIDAVIT

I, Special Agent Emily Beyer, being duly sworn, hereby depose and state as follows:

### INTRODUCTION

1.    I am a Special Agent (SA) with the United States Secret Service (USSS) and have been so employed for approximately eighteen (18) years. I am currently assigned to the Tallahassee Resident Office of the USSS. I submit this affidavit based upon information known to me personally from investigation, as well as information obtained from others who have investigated this matter and/or have personal knowledge of the facts herein.

2.    My experience as a USSS SA has included the investigation of cases involving financial crimes, including violations of Title 18, United States Code, Section 1956, and crimes that are facilitated through the use of the mail system, including violations of Title 18, United States Code, Section 1341. I have received training and gained experience in interview and interrogation techniques, arrest procedures, search warrant applications, forfeiture, the execution of searches and seizures, computer crimes, financial crimes, computer evidence identification, computer evidence seizure and processing, and various other criminal laws and procedures.

3.     I make this affidavit in support of an application for a warrant to search a condominium unit at "Hamptons at Metro West," 6660 Times Square Avenue, Unit 102, Orlando, Florida (hereinafter, "Unit 102"). The evidence sought is documentation relating to government grants sought by CLEAN FUEL, LLC, SOLARBLUE, and any other entity controlled by LEE MAHER and LARRY LONG.  As set forth herein, there is probable cause to believe that persons associated with these entities committed violations of Title 18, United States Code, Sections 287 (false claims against the United States), 286 (false claim conspiracy), 1341 (mail fraud), and 1956 (money laundering) and that evidence of these crimes will be located on the above described premise, Unit 102.

4.     The facts set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of cooperating witnesses; my review of documents and bank records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience.  Since this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

## SUMMARY OF INVESTIGATION

5.     Investigation revealed that CLEAN FUEL, LLC (CLEAN FUEL) submitted fraudulent documents in support of an application to receive a $2,500,000.00 grant

2

awarded by the Florida Energy and Climate Commission, Tallahassee, Florida. The grant was funded with federal money that was awarded through the American Recovery and Reinvestment Act of 2009.

6.      LEE MAHER is the Chief Executive Officer of CLEAN FUEL and LARRY LONG acts as the grant coordinator for CLEAN FUEL.

7.      CLEAN FUEL received $2,232,000.00 in grant funds for the reimbursement of equipment that was never purchased by CLEAN FUEL. False and misleading documents in support of this purchase were submitted by CLEAN FUEL in furtherance of the grant application.

8.      The $2,232,000.00 was initially deposited into the bank account of CLEAN FUEL, but shortly thereafter it was diverted to multiple business and personal bank accounts under the control of LEE MAHER. This grant money was used to fund other Limited Liability Companies (LLC) under the control of LEE MAHER, as well as personal expenses such as payments on a Manhattan, New York, penthouse condominium and a suite at Lincoln Financial Field in Philadelphia, Pennsylvania.

9.      The project for which the grant funds were awarded was never completed by CLEAN FUEL and CLEAN FUEL continues to submit fraudulent documentation in support of the grant project.

## BACKGROUND OF AMERICAN RECOVERY AND REINVESTMENT ACT OF 2009

10.      On or about February 13, 2009, the United States Congress passed the American Recovery and Reinvestment Act of 2009 (Recovery Act), more commonly referred to as the "stimulus package." The Recovery Act provided tax cuts for families

3

and businesses; funding for entitlement programs; and funding for federal contracts, grants, and loans.

11.     On or about February 17, 2009, the President of the United States signed the Recovery Act into law.

12.     One of the programs contained within the Recovery Act was the State Energy Program ("SEP") Formula Grants. These were established as funding mechanisms for energy efficiency and renewable energy projects. The SEP will distribute $3.1 billion of funding to the states and U.S. territories under the Recovery Act. The states act as the decision maker and administrator for the SEP activities within the state.

13.     On April 22, 2009, the Governor's Energy Office, Florida Energy and Climate Commission, Tallahassee, Florida, was awarded a SEP grant in the approximate amount of $126,089,000.00 from the United States Department of Energy ("DOE") pursuant to the Recovery Act.

14.     The Florida SEP is divided into several program categories. One program is Shovel Ready Energy Project Grants. This program was allocated approximately $7,972,740.00 in funding from the Recovery Act.

15.     The Shovel Ready Energy Project Grants program was established to leverage Florida's state energy grant initiatives to identify "shovel ready" projects that could be expeditiously implemented through available SEP funding. The goal was to provide grants for competitively selected renewable energy and energy efficiency technology projects. The top ten ranked (but unfunded) projects from Fiscal Year 2008-

4

2009 grant applications from the Renewable-Energy and Energy-Efficient Technology category and the top ten ranked (but unfunded) projects from the Renewable-Energy and Energy-Efficient Technology for Bioenergy category were selected to receive funding.

16.    The Governor's Energy Office submitted the twenty (20) selected grant applicants to the DOE for eligibility and environmental review pursuant to the requirements established by the Recovery Act.  Three (3) of the twenty (20) grants were selected to receive funding after DOE review.

17.    On or about May 13, 2010, CLEAN FUEL was awarded a Shovel Ready Energy Project Grant by the Governor's Energy Office in the amount of $2,500,000.00.

18.    On December 10, 2010, CLEAN FUEL received $2,232,000.00 in funding pursuant to the grant.

19.    In 2011, the Governor's Energy Office was renamed the Office of Energy and realigned under the control of the Florida Department of Agriculture and Consumer Services (FDACS).  I am working in this investigation with Captain Brian Balser of the Inspector General's Office for the Florida Department of Agriculture.  He and other personnel within the Department of Agriculture and the Office of Energy have verified my understanding of the grant process and the particulars of the that grant was awarded to CLEAN FUEL.

## RELATIONSHIP BETWEEN
## CLEAN FUEL, LLC and CLEAN FUEL LAKELAND, LLC

20.     Florida Department of State, Division of Corporations, records show that CLEAN FUEL, LLC, was established on or about April 19, 2007 as a Florida Limited Liability Company and that on September 23, 2011, there was an Administrative Dissolution. LEE J. MAHER was the Manager/Member and the address used by CLEAN FUEL, LLC, was 189 S. Orange Avenue, Suite 2100, Orlando, Florida. The last annual report was filed on January 21, 2010.

21.     Florida Department of State, Division of Corporations, records show that CLEAN FUEL LAKELAND, LLC, was established on or about March 23, 2009 as a Florida Limited Liability Company and that it is currently active. LEE J. MAHER is the Manager/Member and the address used by CLEAN FUEL LAKELAND, LLC, is 189 S. Orange Avenue, Suite 2100, Orlando, Florida. The last annual report was filed on April 30, 2012.

22.     The address 189 S. Orange Avenue, Suite 2100, Orlando, Florida, is the former corporate headquarters for several LLC's controlled by LEE MAHER.

23.     CLEAN FUEL initially applied for a $2,500,000.00 grant with the Governor's Energy Office in approximately October 2008, prior to the existence of CLEAN FUEL LAKELAND.

24.     CLEAN FUEL was selected as a recipient for the $2,500,000.00 grant from the Governor's Energy Office in approximately February 2009; however, the funds were not then available to fund the grant.

6

25.     CLEAN FUEL reapplied for the $2,500,000.00 grant after the State of Florida received grant funding from the Recovery Act in April 2009. The application was revised from the initial application to meet federal DOE requirements.

26.     CLEAN FUEL operated a grease rendering plant in Groveland, Florida, that was sold in approximately December 2010.

27.     CLEAN FUEL LAKELAND operated a biodiesel plant in Lakeland, Florida, that was purchased in approximately April 2009 and idled in approximately September 2010.

28.     It is the CLEAN FUEL LAKELAND biodiesel plant and equipment that is the subject of the Recovery Act grant, although the grant was awarded to CLEAN FUEL and not CLEAN FUEL LAKELAND. Applications and documents submitted by CLEAN FUEL to the Governor's Energy Office and the Office of Energy all make reference to the biodiesel facility located in Lakeland, Florida.

29.     CLEAN FUEL LAKELAND was established after CLEAN FUEL had been awarded the initial grant and the name difference was never documented by employees of the Governor's Energy Office or the Office of Energy.

## BACKGROUND OF CIVIL CASE
## ELBOW RIVER vs. CLEAN FUEL LAKELAND, LLC

30.     The assets that are the subject of a lawsuit against CLEAN FUEL LAKELAND were used by CLEAN FUEL as evidence that matching funds were expended for the grant requirements.

7

31.     On or about March 31, 2009, Purada Processing, LLC (Purada) entered into an Asset Purchase Agreement with CLEAN FUEL LAKELAND, LLC (CLEAN FUEL LAKELAND) and LEE J. MAHER. Purada is a subsidiary of World Energy Alternatives, LLC (World Energy). In the Asset Purchase Agreement, Purada agreed to sell to CLEAN FUEL LAKELAND certain assets related to a biodiesel production facility located at 1248 George Jenkins Boulevard, Lakeland, Florida (Lakeland facility). Under the Asset Purchase Agreement, as part of the purchase price for the Lakeland facility, CLEAN FUEL LAKELAND agreed to execute a Promissory Note in favor of World Energy. Also under the Asset Purchase Agreement, CLEAN FUEL LAKELAND agreed to execute a Security Agreement, and LEE MAHER agreed to execute the "Maher Personal Guaranty."

32.     The assets that were included under the Asset Purchase Agreement were clearly listed in a nine (9) page document titled Schedule 1.1. This document contained details such as the asset number, date acquired, vendor, description, and type.

33.     On or about April 15, 2009, the closing for the Asset Purchase Agreement occurred and a Promissory Note and Security Agreement were executed on this same date. A $500,000.00 down payment was transferred at closing.

34.     The Promissory Note was in the amount of $6,750,000.00 and was to be paid in two installments. The first installment was due to World Energy by December 31, 2009, in the amount of $3,250,000.00. The second installment of $3,500,000.00 was due to World Energy by December 31, 2010.

35.   On or about April 29, 2009, LEE MAHER executed the Maher Personal Guaranty, which was an unconditional guaranty that if the buyer defaulted on the payment obligations that the obligations would become immediately due and payable by Lee Maher upon written notice.

36.   On or about October 26, 2009, World Energy entered into an Assignment Agreement, whereby World Energy assigned the Promissory Note, Security Agreement, Maher Personal Guaranty, and other assets to Elbow River Marketing Limited Partnership (Elbow River).

37.   CLEAN FUEL LAKELAND failed to make the first installment payment of $3,250,000.00 by the due date of December 31, 2009, to Elbow River.

38.   On March 12, 2010, Elbow River filed a Complaint in U.S. District Court, Middle District of Florida (MDFL), against CLEAN FUEL LAKELAND and LEE MAHER.

39.   On August 13, 2010, Elbow River filed a Motion for Summary Judgment in the MDFL.

40.   On October 26, 2010, the "Declaration of Larry Long in Support of Response to Plaintiff Elbow River's Motion for Summary Judgment" was filed in the MDFL. Part of the declaration of LARRY LONG included the statement, "after taking possession of the plant, it was discovered that significant assets that were supposed to be transferred under the Asset Purchase Agreement were not at the facility. Attached hereto as Exhibit B is Schedule 1.1 of the Asset Purchase Agreement that has been annotated to show what items are missing." Long affirmed the foregoing was true and

9

signed the declaration on October 26, 2010.  Sixteen (16) assets on Schedule 1.1 had

the notation "missing" handwritten to the left of the asset number.

41.      On December 16, 2010, U.S. District Court Judge James S. Moody Jr.,

entered an Order granting Elbow River's Motion for Summary Judgment on Counts I

and II of their Motion for Summary Judgment which were in reference to the breach of

the Promissory Note and the breach of the Maher Personal Guaranty.

42.      On October 24, 2011, U.S. District Court Judge James S. Moody Jr.,

entered a Final Judgment against CLEAN FUEL LAKELAND and LEE MAHER in the

amount of $7,034,987.29, plus interest on unpaid amounts.

## BACKGROUND OF SHOVEL READY ENERGY PROJECT GRANT
## CLEAN FUEL LAKELAND / CLEAN FUEL

43.      On or about May 12, 2010, LEE MAHER signed the "Florida Energy and

Climate Commission Grant Agreement Number ARS005" (FEEC grant).  The purpose

of the FEEC grant was to provide financial assistance for energy reduction to CLEAN

FUEL in the "Commercial Production of Biodiesel from High FFA Foodstock."

> 1) Section 1 of the FEEC grant states in part that "the Grantee
>    shall be a sub-grantee of federal financial assistance from
>    USDOE."
>
> 2) Section 4A of the FEEC grant states in part that "the Grantee
>    shall be eligible for reimbursement of allowable costs resulting
>    from obligations incurred during the term of this Agreement."
>
> 3) Section 4D of the FEEC grant states in part that the "Grantee
>    must provide a detailed listing of expenditures made under this
>    Agreement" and the "listing shall include, at a minimum, a
>    description of the goods or services purchased, date of the
>    transaction, check or voucher number, amount paid and vendor
>    name."

4) Attachment A of the FEEC grant is the Grant Work Plan. Section G of the Grant Work Plan is a Project Budget that shows CLEAN FUEL has contributed $6,526,102.16 in matching funds on equipment purchases, as required by the FEEC grant. The matching funds used on equipment purchases are further detailed on a sixteen (16) page list. The detailed equipment listing includes the assets that were included in the Elbow River Asset Purchase Agreement (and not paid for as of October 24, 2011 when a judgment was ordered) further described above, including those assets that LARRY LONG claimed were missing in his Declaration, filed in the MDFL on October 26, 2010.

44.    On or about May 13, 2010, CLEAN FUEL was awarded a Shovel Ready Energy Project Grant by the Governor's Energy Office in the amount of $2,500,000.00.

45.    In approximately July 2010, CLEAN FUEL LAKELAND stopped making lease payments on the property where the CLEAN FUEL LAKELAND biodiesel facility was located.

46.    On or about September 10, 2010, the CLEAN FUEL LAKELAND biodiesel facility was idled and shortly thereafter CLEAN FUEL LAKELAND lost access to the property, because of the failure to make lease payments.

47.    On or about October 5, 2010, LEE MAHER signed the "Florida Energy and Climate Commission Grant Agreement Number ARS005, Amendment 1" (FEEC amended grant). The changes in the FEEC amended grant stated in part, "This Agreement shall be effective June 24, 2009, for the purpose of meeting the cost share or match requirements as described in Attachment A-1, Grant Work Plan." The Grant Work Plan was also amended and renamed Attachment A-1. Section G of the Grant Work Plan is the Project Budget and it was amended to show that CLEAN FUEL has

11

contributed $8,855,957.16 in matching funds on equipment purchases. The matching funds used on equipment purchases are further detailed in a sixteen (16) page list. The equipment purchased list includes the assets that were included in the Elbow River Asset Purchase Agreement, further described above, including those assets that LARRY LONG claimed were missing in his Declaration filed in the MDFL on October 26, 2010. The detailed equipment listing also included eleven (11) payments totaling $2,500,000.00 that were scheduled to be made to Fairbanks Morse and other vendors under the category "electrical equipment."

48.     On or about October 14, 2010, Fairbanks Morse Engine (FME) submitted a proposal to CLEAN FUEL for a Fairbanks Morse 12 Cylinder Duel Fuel engine generator set ("genset"). The total purchase price was $2,480,000.00 and was broken down into eight (8) payments as detailed below:

| | | |
|---|---|---|
| 1) | Down payment due by October 18, 2010 | $124,000.00 |
| 2) | Engine, Generator, & Sub-base balance | $459,505.00 |
| 3) | Controls | $134,196.00 |
| 4) | Mechanical Auxiliary Equipment | $282,846.00 |
| 5) | Freight Charges | $ 37,704.00 |
| 6) | Electrical Installation | $723,763.00 |
| 7) | Mechanical Installation | $653,280.00 |
| 8) | Rigging | $ 64,706.00 |

49.     On or about October 18, 2010, LARRY LONG requested and signed a CLEAN FUEL LAKELAND Purchase Order for $2,480,000.00 for the purchase of the genset from FME. The ship to address was listed as CLEAN FUEL LAKELAND, 1248 George Jenkins Boulevard, Lakeland, FL.

12

50.     On October 21, 2010, the FME proposal was signed by LARRY LONG and LEE MAHER and it was witnessed and notarized. According to FME employees, this Purchase Order was executed by both parties, but no money was ever paid and no equipment was ever delivered.

51.     On or about November 5, 2010, LARRY LONG submitted a Grant Monthly Progress Report Form to the Governor's Energy Office on behalf of CLEAN FUEL. The report stated in part, "On October 16, the entire electrical system was ordered totaling $2.48 million. The required deposit and seven sub-systems of the electrical system were paid between October 18 through October 29, 2010." The electrical system that is being referenced is the FME genset.

52.     On or about November 5, 2010, copies of eight (8) checks drawn on Orange Bank of Florida account 21003118 were presented to the Governor's Energy Office as evidence that payments had been made and in support of the grant application. The payee on the checks was "Fairbanks Morse Engine" (FME) and the account holder was CLEAN FUEL LAKELAND. All checks had a facsimile signature of LEE MAHER and were part of a letter size sheet of check stock paper with the check on the top portion and the invoice data on the lower portion. The back side of the checks was not provided. The checks are further described below:

| | | |
|---|---|---|
| 1) 10/18/10 | #2315 | $124,000.00 |
| 2) 10/22/10 | #2336 | $459,505.00 |
| 3) 10/26/10 | #2388 | $134,196.00 |
| 4) 10/28/10 | #2435 | $282,846.00 |
| 5) 10/28/10 | #2480 | $ 37,704.00 |
| 6) 10/28/10 | #2484 | $723,763.00 |
| 7) 10/29/10 | #2489 | $653,280.00 |

13

8) 10/29/10  #2492      $ 64,706.00

53.    The Governor's Energy Office reviewed all the documents submitted on behalf of CLEAN FUEL and determined that CLEAN FUEL had met the grant requirements for matching funding based upon the detailed equipment list that was submitted and that CLEAN FUEL was eligible for a grant reimbursement based on the claim and submission of evidence that payments were made to FME for the genset.

54.    On or about November 30, 2010, the Governor's Energy Office submitted a purchase order to the State of Florida, Department of Financial Services, under Grant number ARS005, for CLEAN FUEL to be paid $2,232,000.00.  The payment represented ninety-percent (90%) of the overall cost of $2,480,000.00.  The remaining ten percent (10%) was held back pending project completion.

55.    On or about December 3, 2010, an employee of the State of Florida, Department of Financial Services, established expense warrant number 1405918770, in the amount of $2,232,000.00, made payable to CLEAN FUEL, LLC, 189 South Orange Ave., Suite 2100, Orlando, Florida.  An expense warrant is a negotiable monetary instrument that is handled in a similar manner as a bank check.

56.    On or about December 7, 2010, the State of Florida received $2,232,000.00 from the DOE as reimbursement for the SEP funding provided to CLEAN FUEL, LLC, via expense warrant number 1405918770.

57.    On or about December 8, 2010, an employee of the Executive Office of the Governor, State of Florida, mailed the expense warrant using the United States

14

Postal Service in Tallahassee, Florida, to CLEAN FUEL, LLC, 189 South Orange Ave., Suite 2100, Orlando, Florida.

58.     Between December 2010 and January 2012, LARRY LONG submitted Grant Monthly Progress Report Forms to the Governor's Energy Office, and later the Office of Energy, on behalf of CLEAN FUEL. The forms all had the statement "the $2.48 million of electrical components are being assembled & prepared by Fairbanks Morse for delivery."

59.     Between February 2012 and October 2012, CLEAN FUEL did not submit the required Grant Monthly Progress Report Forms to the Office of Energy.

60.     On October 1, 2012, LARRY LONG met with representatives of the Office of Energy in Tallahassee, Florida. During this meeting, LARRY LONG claimed the genset had been purchased from FME and was currently in California awaiting transport to Lakeland, Florida. He also provided a picture of a genset as further evidence that funds had been spent on a genset.

61.     On or about October 3, 2012, LARRY LONG submitted eight (8) Grant Monthly Progress Report Forms to the Office of Energy, on behalf of CLEAN FUEL. The forms all had the statement, "until the land and buildings can be purchased...we cannot comply with the grant requirements." The reports were for the February 2012 through September 2012 reporting periods.

62.     On October 7, 2012, LARRY LONG sent an email to representatives of the Office of Energy in Tallahassee, Florida, and in the email he advised the genset was staged and ready for shipment to Lakeland, Florida. He provided an address of 2951 N.

15

Ventura Avenue, Ventura, California, for the present location of the genset. As noted above, CLEAN FUEL lost access to the property where the genset was allegedly to be delivered no later than early 2011.

63.   On October 8, 2012, LARRY LONG sent an email to representatives of the Office of Energy in Tallahassee, Florida, and in the email he advised the serial number for the genset purchased was 38D868022TDSM12.

64.   On or about November 12, 2012, LARRY LONG submitted a Grant Monthly Progress Report Form to the Office of Energy, on behalf of CLEAN FUEL, for the October 2012 reporting period. The form had the statement, "until the land and buildings can be purchased...we cannot comply with the grant requirements."

65.   On November 29, 2012, FME confirmed that no payments in any amount had been made by CLEAN FUEL or any other LLC associated with LEE MAHER, for the genset that CLEAN FUEL reported to have purchased in support of the grant application and for which the $2,232,000.00 was reimbursed to CLEAN FUEL. According to FME employees, no equipment had been or would be delivered under the contract because of the failure to make payments.

66.   On March 15, 2013, LARRY LONG sent an email to representatives of the Office of Energy in Tallahassee, Florida, apologizing for a delay in setting up a meeting to review grant progress due to LEE MAHER being out of the country.

16

## LEE MAHER BANK ACCOUNTS (BUSINESS and PERSONAL) LINKED TO FUNDS FROM SHOVEL READY ENERGY PROJECT GRANT

67.    Orange Bank of Florida records show that during the time period of September 2010 through February 2013, there have been multiple transfers between Orange Bank of Florida accounts under the control of LEE MAHER. These account numbers include 21002348, 21002480, 21002205, 21003085, 21002876, 21003118, 21003393, and 21003415. Records also show there have been multiple transfers via wire and check between Orange Bank of Florida accounts under the control of LEE MAHER and other accounts under the control of LEE MAHER that are held at CNL Bank and Trustco Bank.

68.    On December 10, 2010, State of Florida, Department of Financial Services, expense warrant number 1405918770, in the amount of $2,232,000.00, was deposited to Orange Bank of Florida, account number 21002348.

69.    Orange Bank of Florida records show that account number 21002348 is a business checking account that belongs to CLEAN FUEL, LLC, and was opened on 08/01/08 with an address of 7432 E. Highway 50, Suite 1, Groveland, Florida. The signature card lists LEE JOHN MAHER as the Manager and LARRY K. LONG as an authorized signer on the account. This account will hereafter be referenced as OB 2348 CF LLC.

70.    On December 10, 2010, an internet banking transfer in the amount of $15,000.00 was sent from OB 2348 CF LLC to Orange Bank of Florida account number 21002480.

17

71.   Orange Bank of Florida records show that account number 21002480 is a business checking account that belongs to LJM HOLDINGS, LLC, and was opened on 12/17/07 with an address of 189 South Orange Ave., Suite 2100, Orlando, Florida. The signature card lists LEE JOHN MAHER as the Manager. This account will hereafter be referenced as OB 2480 LJM LLC.

72.   On December 15, 2010, an internet banking transfer in the amount of $20,000.00 was sent from OB 2348 CF LLC to Orange Bank of Florida account number 21002205.

73.   Orange Bank of Florida records show that account number 21002205 is a business checking account that belongs to SOLAR BLUE, LLC, and was opened on 07/02/07 with an address of 189 South Orange Ave., Suite 2100, Orlando, Florida. The address was changed in February 2013 to 7505 W. Sand Lake Rd., Orlando, Florida. The signature card lists LEE JOHN MAHER as the Manager. Bank records for this account show that through at least January 2013, this account receives funding from other accounts controlled by LEE MAHER and that this account continues to fund accounts belonging to CLEAN FUEL LAKELAND, including 21003118 and 21003393. Account 21003118 is the account that was purported to have funded the checks made payable to FME for the genset. Account number 21002205 will hereafter be referenced as OB 2205 SB LLC.

74.   On December 15, 2010, an internet banking transfer in the amount of $24,320.00 was sent from OB 2348 CF LLC to Orange Bank of Florida account number 21003085.

18

75.   Orange Bank of Florida records show that account number 21003085 is a business checking account that belongs to GENCORP OF CENTRAL FLORIDA, LLC, and was opened on 03/17/10 with an address of 189 South Orange Ave., Suite 2100, Orlando, Florida.  The signature card lists LEE JOHN MAHER as the Manager.  This account will hereafter be referenced as OB 3085 GCF LLC.

76.   On December 15, 2010, a wire transfer in the amount of $22,320.00 was sent from OB 3085 GCF LLC to Wells Fargo Bank account number 1000501209668 and the beneficiary was listed as LARRY LONG.  This amount is exactly one percent (1%) of the grant payment that CLEAN FUEL received from the State of Florida, Department of Financial Services.  The special instructions section on the outgoing wire transfer form noted "RE: Comm/Bonus @ Closing: St of FL."

77.   On December 22, 2010, a wire transfer in the amount of $95,000.00 was sent from OB 2348 CF LLC to CNL Bank account number 1020403.

78.   CNL Bank records show that account number 1020403 is a personal checking account that belongs to LEE J. MAHER, and was opened on 11/05/02 using an address in Orlando, Florida.  The signature card lists LEE J. MAHER as the only authorized signer on the account.  This account will hereafter be referenced as CNL 0403 LM.

79.   CNL Bank records show that subsequent to the incoming wire transfer from OB 2348 CF LLC that various debits were posted to CNL 0403 LM from automated teller machine (ATM) transactions and point-of-sale (POS) transactions that were conducted in various locations to include Orlando, New York, Philadelphia, Los

19

Angeles, Charlotte, and Houston. The POS debits were at luxury hotels, merchants that

sell clothing, and personal service providers such as hair/nail care and massages.

80.    CNL Bank records also show that subsequent to the incoming wire

transfer from OB 2348 CF LLC that numerous checks and a wire transfer were posted

to CNL 0403 LM, to include the following:

a)  Check #1833, #1834, and #1835 – all dated 12/28/10 and in the amount of $438.75, each made payable to Flick Law Group, the memo sections reference Lake Brantley Commons, LJM Aspen Investments, and LJM Holdings LLC.

b)  Check #1836, #1837, #1838, #1839, and #1840 – all dated 12/28/10 and in the amount of $640.00, each made payable to Flick Law Group, the memo sections reference LJM of Arizona LLC, LJM of Aspen LLC, LJM of Bachelor Gulch, LJM of Florida LLC, and LJM of New York LLC.

c)  Check #1842, dated 12/28/10, in the amount of $1,794.15, made payable to the Bay Hill Club & Lodge, the memo section references account number 1802.

d)  Check #1846, dated 02/01/11, in the amount of $2,629.04, made payable to the Bay Hill Club & Lodge, the memo section references account number 1802.

e)  Outgoing wire transfer, dated 02/09/11, in the amount of $27,000.00, to Solar Blue LLC, OB 2205 SB LLC.

f)  Check #1852, dated 02/25/11, in the amount of $20,000.00, made payable to Marco Genio. Genio is listed on the SolarBlue LLC website as the current President.

g)  Check #1855, dated 03/14/11, in the amount of $10,000.00, made payable to Solar Blue, the memo section references Canada. This check was deposited in OB 2205 SB LLC.

h)  Check #1859, dated 04/13/11, in the amount of $2,000.00, made payable to LARRY LONG.

20

81. On December 22, 2010, a wire transfer in the amount of $1,300,000.00 was sent from OB 2348 CF LLC to CNL Bank account number 7014913.

82. CNL Bank records show that account number 7014913 is a personal premium money market account that belongs to LEE J. MAHER or MARY K. MAHER, and was opened on 03/28/03 using an address in Orlando, Florida. The signature card lists both LEE J. MAHER and MARY K. MAHER as authorized signers on the account. This account will hereafter be referenced as CNL 4913 LM-MM.

83. On December 22, 2010, a wire transfer in the amount of $400,000.00 was sent from CNL 4913 LM-MM to OB 2205 SB LLC. OB 2205 SB LLC records show that on December 24, 2010, a check posted in the amount of $250,000.00. It was made payable to Eagles Stadium Operator, LLC, and the memo section referenced "Suite License Fee." Eagles Stadium Operator, LLC, is affiliated with the Philadelphia Eagles stadium.

84. On December 22, 2010, a wire transfer in the amount of $600,000.00 was sent from CNL 4913 LM-MM to Coleman Talley LLP. Coleman Talley LLP is a law firm located in Valdosta, Georgia, and Atlanta, Georgia, that practices in the areas of civil trial defense and business law.

85. CNL Bank records also show that subsequent to the incoming wire transfer from OB 2348 CF LLC that numerous checks were posted to CNL 4913 LM-MM, to include the following:

> a) Check #1001, dated 02/18/11, in the amount of $175,000.00, made payable to Plainfield Renewable Energy, the memo section references "Extension Connecticut Project."

21

   b) Check #1002, dated 02/28/11, in the amount of $50,000.00, made
      payable to Solar Blue, the memo section references "Elbow River."
      This check was deposited in OB 2205 SB LLC.

   c) Check #1005, dated 03/21/11, in the amount of $50,000.00, made
      payable to Lee Maher. This check was deposited in CNL 0403 LM.

86.     Orange Bank of Florida records show that account number 21002876 is a
business checking account that belongs to CLEAN FUEL, LLC, (PAYROLL ACCOUNT)
and was opened on 08/11/08 with an address of 189 South Orange Ave., Suite 2100,
Orlando, Florida. The signature card lists LEE JOHN MAHER as the Manager. This
account will hereafter be referenced as OB 2876 CF LLC PAY. This account is
primarily used for payroll expenses and is funded by transfers from OB 2348 CF LLC.

87.     Orange Bank of Florida records show that account number 21003118 is a
business checking account that belongs to CLEAN FUEL LAKELAND, LLC, and was
opened on 10/28/09 with an address of 189 South Orange Ave., Suite 2100, Orlando,
Florida. The signature card lists LEE JOHN MAHER as the Manager. This account will
hereafter be referenced as OB 3118 CFL LLC.

88.     Orange Bank of Florida records show that the checks drawn on OB 3118
CFL LLC and made payable to FME, as detailed in paragraph 52, were never
negotiated. Although copies of these checks were submitted to "prove" that payment to
FME had been made, these checks were never in fact processed by the bank. FME
employees advise that CLEAN FUEL never made the initial deposit or any other
payments for the genset to FME.

22

89.     Orange Bank of Florida records show that account number 21003393 is a business checking account that belongs to CLEAN FUEL LAKELAND, LLC, (PAYROLL ACCOUNT) and was opened on 11/12/09 with an address of 189 South Orange Ave., Suite 2100, Orlando, Florida. The signature card lists LEE JOHN MAHER as the Manager. This account will hereafter be referenced as OB 3393 CFL LLC PAY. This account is primarily used for payroll expenses and is funded by transfers from OB 3118 CFL LLC.

90.     Orange Bank of Florida records show that account number 21003415 is a business checking account that belongs to SOLAR BLUE, LLC, (PAYROLL ACCOUNT) and was opened on 11/12/09 with an address of 189 South Orange Ave., Suite 2100, Orlando, Florida. The signature card lists LEE JOHN MAHER as the Manager. This account will hereafter be referenced as OB 3415 SB LLC PAY. This account is primarily used for payroll expenses and is funded by transfers from OB 2205 SB LLC.

91.     On February 22, 2011, check number 4911 posted to OB 2348 CF LLC. The check was made payable to LARRY LONG in the amount of $3,500.00 and the memo section noted "Comm on deposit amount for CFG sales in Feb 2011." CFG is the abbreviation used for Clean Fuel Groveland, which was the grease rendering plant operated by CLEAN FUEL that was sold in December 2010.

92.     On December 10, 2012, OB 2205 SB LLC was credited $100,000.00 when check #1016 drawn on Trustco Bank account 4460236049 was deposited. The check was made payable to SolarBlue, LLC, and the account holder on the check was SOLAR BLUE LLC. The signature on the check was a facsimile of the signature of Lee

23

Maher and the memo section referenced "funding." Trustco Bank account 4460236049 will hereafter be referenced as TB 6049 SB LLC.

93.     On December 19, 2012, OB 2205 SB LLC was credited $500,000.00 when check #1017 drawn on TB 6049 SB LLC was deposited. The check was made payable to SolarBlue and the account holder on the check was SOLAR BLUE LLC. The signature on the check appeared to belong to Lee Maher and the memo section referenced "funding."

94.     On December 31, 2012, OB 2205 SB LLC was credited $350,000.00 when check #1021 drawn on TB 6049 SB LLC was deposited. The check was made payable to SolarBlue and the account holder on the check was SOLAR BLUE LLC. The signature on the check was a facsimile of the signature of Lee Maher and the memo section referenced "funding."

95.     On January 11, 2013, OB 2205 SB LLC was credited $200,000.00 when check #1024 drawn on TB 6049 SB LLC was deposited. The check was made payable to SolarBlue, LLC, and the account holder on the check was SOLAR BLUE LLC. The signature on the check was a facsimile of the signature of Lee Maher and the memo section referenced "funding."

96.     On January 17, 2013, OB 2205 SB LLC was credited $45,000.00 when check #1029 drawn on TB 6049 SB LLC was deposited. The check was made payable to SolarBlue and the account holder on the check was SOLAR BLUE LLC. The signature on the check was a facsimile of the signature of Lee Maher and the memo section referenced "funding."

24

97.     On February 6, 2013, OB 2205 SB LLC was credited $60,000.00 when check #1503 drawn on Trustco Bank account 4460325345 was deposited. The check was made payable to SolarBlue LLC and the account holder on the check was SOLAR BLUE LLC. The signature on the check was a facsimile of the signature of Lee Maher and the memo section referenced "funding." Trustco Bank account 4460325345 will hereafter be referenced as TB 5345 SB LLC.

98.     On February 13, 2013, OB 2205 SB LLC was credited $200,000.00 when check #1506 drawn on TB 5345 SB LLC was deposited. The check was made payable to SolarBlue LLC and the account holder on the check was SOLAR BLUE LLC. The signature on the check was a facsimile of the signature of Lee Maher and the memo section referenced "funding."

99.     Orange Bank of Florida is a locally owned and operated state-charted community bank that is headquartered in central Florida and is a member of the Federal Deposit Insurance Corporation (FDIC). Orange Bank of Florida routinely sends and receives payments that are processed through banks that are located outside the state of Florida.

100.    Interviews of past and present CLEAN FUEL and SOLARBLUE employees determined that wire transfers that are sent from Orange Bank of Florida accounts controlled by LEE MAHER are usually initiated by a member of his accounting staff sending an email containing a wire transfer request to an Orange Bank of Florida employee and then an Orange Bank of Florida employee calls LEE MAHER to confirm the wire. LEE MAHER is personally known to Orange Bank of Florida staff due to prior

25

associations with the Orange Bank of Florida Board of Directors. Orange Bank records document that wire transfers are confirmed by contact with LEE MAHER.

101.   CNL Bank is headquartered in central Florida and is a member of the Federal Deposit Insurance Corporation (FDIC). CNL Bank routinely sends and receives payments that are processed through banks that are located outside the state of Florida.

102.   Interviews of past and present CLEAN FUEL and SOLARBLUE employees determined that wire transfers that are sent from any wire transfers that are sent from CNL Bank accounts controlled by LEE MAHER must be approved in person by LEE MAHER at a CNL Bank branch.

103.   Trustco Bank is headquartered in New York and is a member of the Federal Deposit Insurance Corporation (FDIC). Trustco Bank branches located in Florida routinely send and receive payments that are processed through banks that are located outside the state of Florida.

104.   Wells Fargo Bank is headquartered in California and is a member of the Federal Deposit Insurance Corporation (FDIC). Wells Fargo Bank branches located in Florida routinely send and receive payments that are processed through banks that are located outside the state of Florida.

## LEE MAHER CORPORATE HOLDINGS

105.   Florida Department of State, Division of Corporations, records show that CLEAN FUEL, LLC, was established on or about April 19, 2007 as a Florida Limited Liability Company and that on September 23, 2011, there was an Administrative

Dissolution. Lee J. Maher was the Manager/Member and the address used by CLEAN FUEL, LLC, was 189 S. Orange Avenue, Suite 2100, Orlando, Florida. The last annual report was filed on January 21, 2010.

106.    Florida Department of State, Division of Corporations, records show that CLEAN FUEL LAKELAND, LLC, was established on or about March 23, 2009 as a Florida Limited Liability Company and that it is currently active. Lee J. Maher is the Manager/Member and the address used by CLEAN FUEL LAKELAND, LLC, is 189 S. Orange Avenue, Suite 2100, Orlando, Florida. The last annual report was filed on April 30, 2012.

107.    Florida Department of State, Division of Corporations, records show that SOLAR BLUE, LLC, was established on or about November 20, 2006 as a Florida Limited Liability Company and that on January 16, 2009, there was a name change to SOLARBLUE, LLC. Lee J. Maher and Mary Maher are the Manager/Members and the address used by SOLARBLUE, LLC, is 7505 W. Sand Lake Rd., Orlando, Florida. The previous address was 189 S. Orange Avenue, Suite 2100, Orlando, Florida. The last annual report was filed on April 30, 2012.

108.    Florida Department of State, Division of Corporations, records show that GENCORP OF CENTRAL FLORIDA, LLC, was established on or about February 18, 2010 as a Florida Limited Liability Company and that on September 23, 2011, there was an Administrative Dissolution. Lee J. Maher and Mary Maher were the Manager/Members and the address used by GENCORP OF CENTRAL FLORIDA, LLC, was 189 S. Orange Avenue, Suite 2100, Orlando, Florida. No annual reports were filed.

27

109.   Florida Department of State, Division of Corporations, records show that LJM HOLDINGS, LLC, was established on or about September 22, 2007, as a Florida Limited Liability Company and that it is currently active.  Lee J. Maher and Mary Maher are the Manager/Members and the address used by LJM HOLDINGS, LLC, is 189 S. Orange Avenue, Suite 2100, Orlando, Florida.  The last annual report was filed on April 30, 2012.

## COURT OF CLAIMS CASE

110.   I have pulled court records from litigation pending in the United States Court of Claims in which CLEAN FUEL is suing the United States, claiming that CLEAN FUEL and CLEAN FUEL LAKELAND was improperly denied approximately $4,000,000 in other Recovery Act payments.  The face of those documents suggests that the litigation is fraudulent as part of the payments are allegedly due as reimbursement for the purchase of several smaller gensets from Cummins Atlanic ("Cummins"), while Cummins employees advise that the gensets were ordered and delivered but that no payments have been received.

## EVIDENCE SOUGHT

111.   In recent weeks, I have interviewed and attempted to interview a number of past and present employees of CLEAN FUEL and SOLARBLUE.  I have been told by at least two different persons that within the last month LEE MAHER has discussed the signing of affidavits which make false statements about their knowledge of the CLEAN FUEL grant which is the subject of this investigation.

28

112.    Several of the employees have told me about a condominium located at "Hamptons at Metro West," 6660 Times Square Avenue, Unit 102, Orlando, Florida. Unit 102 is controlled by LEE MAHER and is used by employees who live outside the Orlando area while they are in town. One employee has advised me that there are a number of boxes of records relating to CLEAN FUEL grants located within this condominium. Today, March 29, 2012, I was contacted by an employee who was in the condominium (Unit 102) earlier in the day to retrieve his personal property. While in the condominium he took the following photographs and sent them to me which I have reviewed: (1) the door to Unit 102, (2) an overview of what appear to be at least ten boxes, and (3) a close up of one box bearing writing including "CLEAN FUEL" and "GRANTS."

113.    The employee who sent the photos advised me that these records were records of CLEAN FUEL that were previously stored at CLEAN FUEL headquarters.

114.    A different employee advised me that, within the last month, the employee had witnessed LEE MAHER's executive assistant making changes in Orange Bank statements.

## CONCLUSION

115.    Based upon all the foregoing, there is probable cause to believe that evidence of violations of Title 18 United States Code, Sections 287 (false claims against the United States), 286 (false claim conspiracy), 1341 (mail fraud), and 1956 (money laundering) will be located on the above described premise, Unit 102. This evidence includes any and all documentation relating to applications for grants to be funded by

29

the United States Government and/or the state of Florida, all records relating to

purchase, sale, or use of alternative energy equipment, all records relating to accounts

at Orange Bank of Orlando, CNL Bank, Trustco Bank, and Wells Fargo (formerly

Wachovia Bank), and all records relating to the expenditure and/or disbursement

(directly or indirectly) of grant proceeds.

116.   I have consulted with the Assistant United States Attorney who is

assigned to this case in the Northern District of Florida, Michael T. Simpson, and

understand that examination of any materials seized must be deferred until they can be

examined by a "taint team," to avoid intruding on any individual's attorney-client

privilege.

By this affidavit and application, I request the Court issue a search warrant for

the evidence described.

FURTHER AFFIANT SAYETH NAUGHT.

Special Agent Emily J. Beyer
United States Secret Service

Signed and sworn to me
on this _27_ day of March, 2013

Thomas B. Smith
United States Magistrate Judge

30

I certify the foregoing to be a true
and correct copy of the original.
SHERYLL. J. CREMI, Clerk
United States District Court
Middle District of Florida

By: _____
              Deputy Clerk